**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

FILED

MAR 2 2 2012

WILLIAM B. GUTHRIE
Clerk, U.S. District Court

By_____
Deputy Clerk

| | | |
|---|---|---|
| SHELTON D. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-10-113-RAW-SPS |
| | ) | |
| RANDALL WORKMAN and TRACY | ) | |
| DAVIS, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter comes on for consideration of Defendants' Motion to Dismiss, or alternatively Motion for Summary Judgment (Dkt. # 20) filed on September 29, 2010. The Court has before it for consideration plaintiff's complaint, the defendants' motion, and a special report prepared at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff has not filed any response to the motion. For the reasons stated below, the Court finds this action should be dismissed for failure to exhaust administrative remedies and for failure to state a claim upon which relief may be granted.

### *Background*

Plaintiff, an inmate at the Oklahoma State Penitentiary in McAlester, Oklahoma, brought this action pursuant to 42 U.S.C. § 1983, seeking injunctive relief and unspecified compensatory damages for his mental and emotional suffering and punitive damages. Plaintiff alleges because he has HIV (AIDS), his medical condition requires that he not be

housed with any other inmates and that DOC policies require him to be housed in a single cell. Plaintiff asserts the defendants have been deliberately indifferent to his medical needs and have violated his constitutional rights against cruel and unusual punishment and equal protection by not housing him in a single cell. Further, plaintiff claims that the defendants have violated his constitutional rights by forcing him to be double celled with an inmate whose medical condition endangers plaintiff's health due to that inmate's weakened immune system. Finally, plaintiff claims prior to his agreement to be double celled, his security status was changed from level four to level one and his personal property was confiscated by prison guards. Plaintiff does not allege what property was taken or that he had not, at the time of filing his complaint, had his property returned to him.

### Undisputed Facts[1]

Plaintiff is currently housed on death row at the Oklahoma State Penitentiary. The Oklahoma Department of Corrections ("DOC") has a written policy governing inmate grievances, entitled "Offender Grievance Process" - OP-090124. See, Dkt. 21-7. That policy provides that an offender must first try to resolve his complaint informally by talking with appropriate staff within three days of the incident. *Id.*, at p. 7. If not resolved, the inmate must submit a "Request to Staff" stating "completely but briefly the problem." *Id.* This request must be submitted within seven calendar days of the incident. *Id.*, at p. 8. If the complaint is not resolved informally, the offender may obtain and complete the "Offender

---

[1]The following facts are either undisputed–i.e., not specifically controverted by Jackson in accordance with Local Civil Rule 56.1(c)–or are described in the light most favorable to Jackson. Immaterial facts are omitted.

Grievance Report Form" and submit it along with the "Request to Staff" form used in the informal resolution process with the response, to the reviewing authority. *Id.* DOC policy requires this grievance form to be submitted "within 15 calendar days of the incident, or the date of the response to the "Request to Staff" form, whichever is later." *Id.*

Plaintiff was advised, on or about September 17, 2009,[2] that his housing status was being changed from a single cell to a double cell. Additionally, he was told that if he refused to be double celled, he would be demoted to security level one and he would only be allowed to retain the property which was allowed for security level one. Plaintiff agreed to be double celled with offender Cannon. Beginning on September 21, 2009 until July 5, 2010, plaintiff was placed in a double cell with offender Cannon. The DOC has a written policy governing "Offender Housing," OP-030102. *See,* Dkt. # 21-3. The housing policy allows offenders to be single celled for medical reasons as long as there is medical documentation verifying the need for such an assignment. *Id.*, at p. 6.

Based on DOC's records, it appears plaintiff tried to resolve his complaints about his cell status change by completing on October 19, 2009, a "Request to Staff." *See,* Dkt. 21-2. Plaintiff's request indicates that he was unhappy with being double celled and losing his level 4 privileges and he requested that he be returned to a single cell and have his privileges restored for safety and health reasons. *See,* Dkt. 21-4. In response, on October 26, 2009,

---

[2]Plaintiff asserted in his "Request to Staff" that he was advised of the change in his cell assignment on September 17, 2009. Affidavits by Tracy Davis, Unit Manager at Oklahoma State Penitentiary, and Keith Sherwood, Correctional Case Manager at Oklahoma State Penitentiary, indicate that plaintiff was advised of these changes on September 1, 2009. Dkts. 21-9 and 21-10, respectively. Since the response to the appeal indicates the "RTS states 9/17/2009," the Court finds this date is the one most favorable to Plaintiff Jackson.

plaintiff was told "If you are to be placed in single cell status per medical, you will need to address this with medical." *Id.* Thereafter, on November 12, 2009, plaintiff appealed and the reviewing authority responded that the answer by the Unit Manager was correct since plaintiff had not provided any documentation that medical required him to be single celled. *See*, Dkt. 21-5. Plaintiff attempted to appeal from the reviewing authority. His appeal, however, was denied because he had not complied with the time frames set forth in DOC's policy.

Plaintiff's Cell Assessment Form, which was completed on June 2, 2000, indicates that plaintiff had no restrictions placed on his housing/cell assignment. *See*, Dkt. 21-13. Further, according to Dr. John Marlar, Head Physician at the Oklahoma State Penitentiary, plaintiff was medically cleared to be double celled and at no time during his incarceration at Oklahoma State Penitentiary was he required to be single celled due to a medical condition. *See*, Dkt. 21-8.

Approximately nine months after receiving his double cell assignment, Plaintiff began demanding to be removed from the cell with offender Cannon. As a result, Plaintiff was disciplined by demoting him to a level one security status and some of his property was taken in accordance with DOC property and security status level policies.[3] *See*, Dkts. 21-9, 21-10,

---

[3] According to the special report, the demotion in security levels and the removal of some of plaintiff's property did not occur until approximately three months after this lawsuit was filed. Prior to that time, plaintiff had only been advised what would occur if he did not accept his double cell assignment. *See*, Dkts. 21-9 and 21-10.

21-11, 21-12, 21-14 and 21-15. Plaintiff has not filed any grievances concerning his property being taken due to his change in security status in July 2010.

*Legal Analysis*

Summary judgment is appropriate where there is no dispute of material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56. When presented with a summary judgment motion, this Court must determine whether there "are any genuine factual issues that properly can be resolved only by the finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When evaluating a motion for summary judgment, this Court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988). The party opposing summary judgment, however, "may not rest upon mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

**A. Failure to exhaust administrative remedies**

The Prison Litigation Reform Act of 1996 ("PLRA") provides in part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n. 1 (10ᵗʰ Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under the PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10ᵗʰ Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10ᵗʰ Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

Based upon the undisputed factual background, it is clear Plaintiff did not properly exhaust his administrative remedies. While Plaintiff did complete a "Request to Staff" form on or about October 19, 2009, plaintiff only asked to be given back his single cell status. He did not indicate that personal property had been taken from him. Since the action taken against him occurred on September 17, 2009, DOC policy required that he file this request to staff within seven days of September 17ᵗʰ. Plaintiff did not, however, file the request until October 19, 2009.

Even if this Court were to assume that Plaintiff had timely filed this request and timely appealed from the denial of the same, nothing submitted to this Court indicates Plaintiff ever attempted to address this issue with DOC medical personnel as he was instructed in response

to his request. Rather, an affidavit from Dr. John Marlar, Head Physician at the Oklahoma State Penitentiary, indicates plaintiff has never needed to be single celled for medical reasons. Plaintiff has not contested any of the findings in the special report, nor has he filed any response to the defendant's motion to dismiss and/or for summary judgment.

## B. Failure to state a claim

Plaintiff's complaint alleges he was subjected to cruel and unusual punishment by being placed in a cell with another inmate who had "multiple serious health problems and a damage (sic) immune system." Thus, he requests this Court issue an injunction to prevent the continued deprivation of his constitutional rights. He also claims that official DOC policy has been ignored and/or misapplied and that he has been subjected to "wanton and unecessary (sic) infliction of pain." Further, plaintiff claims he is being housed in an "unsafe life-threatening condition" and that there is a "substantial risk of contracting a serious disease from cellmate inside a double cell." He also claims defendants have shown deliberate indifference to his serious medical needs by failing to take reasonable steps to protect him from contracting communicable disease from other inmates. Additionally, while not indicating what custom and/or policy to which he is referring, plaintiff says the defendants have allowed a custom and/or policy to continue despite the risks to his health.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993). In order to

state a claim under § 1983, a plaintiff must 1) allege a violation of a right secured by the Constitution or laws of the United States and 2) demonstrate that the alleged deprivation was committed by a person acting under color of law. *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009). In *Estelle v. Gamble*, 429 U.S. 97. 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court held only "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. Later in *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), the Court held that a claim that the conditions of a prisoner's confinement violate the Eighth Amendment requires an inquiry into the prison officials' state of mind. "Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle*." *Id.*, at 303, 111 S.Ct., at 2327. The Supreme Court has recognized that exposure to contagious diseases may violate the Eighth Amendment if prison officials, acting with deliberate indifference, expose a prisoner to a sufficiently substantial "risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (holding that exposure to environmental tobacco smoke states an Eighth Amendment cause of action even though inmate was asymptomatic because the health risk posed by involuntary exposure to second hand smoke was "sufficiently imminent").

In considering plaintiff's claims relative to double celling, the plaintiff fails to allege a constitutional violation. The law is well-settled that double celling inmates is not *per se*

unconstitutional. *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). *See also, Duncan v. Puckett*, 91 F.3d 137 (5th Cir. 1996) (claim of being placed "in a single cell with another inmate" dismissed as frivolous). While an inmate might state an Eighth Amendment claim if he alleged that he was being housed with an inmate who had a serious contagious disease, such as tuberculosis which is spread by airborne particles,[4] there are no factual allegations within plaintiff's complaint to suggest that sarcoidosis is a contagious disease. Rather, plaintiff's allegations of the dangers of being placed in a cell with an inmate who has Sarcoidosis are conclusory and conclusory allegations fail to state a claim for relief. *See, Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) and *Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir. 1988). Further, Plaintiff has not alleged that he has suffered any injury, let alone a "serious medical injury" from being housed with an inmate who allegedly has sarcoidosis (stage 3). While the majority of reported cases have dealt with complaints from inmates who are concerned about being housed with HIV-infected inmates, as opposed to HIV-infected inmates complaining about being housed with other inmates, none of those cases have found that HIV-infected inmates should be segregated from the general population. *See, Glick v. Henderson,* 855 F.2d 536, 539 (8th Cir.1998) (refused to grant inmate's request to order segregation of HIV-infected inmates because of inmate's fear of contracting HIV through work assignments, and refusing to order testing of food service inmates); *Bolton v. Goord*, 992 F.Supp. 604, 628 (S.D.N.Y.1998) (finding inmate was not

---

[4]*See, Crocamo v. Hudson County Correctional Center*, 2007 WL 1175753, at *6 (D.N.J. Apr. 19, 2007).

injured by exposure to HIV-positive inmate in double cell because HIV is not airborne or spread by casual contact and the prison provided inmates with education regarding precautions to take to prevent the spread of HIV); *Muhammed v. Bureau of Prisons*, 789 F.Supp. 449 (D.D. C.1992) (denying writ of mandamus to compel isolation of those with AIDS); *Myers v. Maryland Division of Corrections*, 782 F.Supp. 1095 (D.Md.1992) (denying request for mandatory segregation of HIV-positive inmates in housing and work assignments); *Portee v. Tollison*, 753 F.Supp. 184 (D.S.C.199), *aff'd* in *Portee v. Tollison*, 929 F.2d 694 (4th Cir.1991) (inmate not entitled to segregation of prisoners with AIDS); *Deutsch v. Fed. Bureau of Prisons*, 737 F.Supp. 261, 267 (S.D.N.Y.1990) (finding the Plaintiff had not established deliberate indifference when he did not assert any defendant had "specific knowledge that the cellmate might engage in conduct which would expose Deutsch to a high risk of contracting AIDS, yet tacitly condoned or allowed this conduct to occur."); *Cameron v. Metcuz*, 705 F.Supp. 454 (N.D.Ind.1989) (court upheld prison's decision not to segregate AIDS infected inmate with a history of assaultive behavior since bitten inmate had not shown that prison officials knowingly put the plaintiff in danger); *Muhammad v. Frame*, 1987 WL 16889 (E.D.Pa. Sept. 11, 1987) (dismissing suit where inmate alleged violation of rights because he shared a cell with HIV-infected and AIDS-diagnosed patients); and *Foy v. Owens*, 1986 WL 5564 (E.D.Pa. Mar. 19, 1986) (inmate must show danger of infection to challenge failure of prison officials to segregate possible AIDS carriers).

To show deliberate indifference to his serious medical needs the Plaintiff must demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). While Plaintiff may indeed have a serious medical condition, HIV, Plaintiff has simply failed to establish that his conditions of confinement pose a substantial risk of serious harm to this medical condition. In light of Dr. Marlar's affidavit which indicates plaintiff has been "medically cleared to be double celled,"[5] plaintiff can not establish that the defendants, who are non-medical personnel, were or have been indifferent to his serious medical condition because they have never been informed that plaintiff's condition warrants a single cell housing assignment. Accordingly, this Court finds plaintiff's complaint fails to state a claim for relief.

Since plaintiff has failed to establish that he completed the inmate grievance process as delineated in the Oklahoma Department of Corrections Offender Grievance Policy, OP-090124, this Court finds plaintiff is barred from pursuing his § 1983 claim under the PLRA for failure to exhaust his administrative remedies. Assuming arguendo that plaintiff had complied with the grievance process, plaintiff's complaint still fails to state a claim for relief.

---

[5]*See*, Dkt. 21-8.

Accordingly, for the reasons stated herein, this Court hereby grants the defendant's motion for summary judgment.

**ACCORDINGLY, IT IS HEREBY ORDERED that:**

1.  Defendants' Motion to Dismiss and/or Motion for Summary Judgment (Dkt. # 20) is **granted** and Plaintiff's civil rights complaint (Dkt. # 1) is **dismissed with prejudice** for failure to exhaust administrative remedies and for failure to state a claim upon which relief may be granted.

2.  A separate judgment shall be entered in favor of the defendants and against plaintiff.

3.  Plaintiff remains obligated to pay in monthly installments the **$350.00** filing fee incurred in this matter.

It is so ordered on this _____ day of March, 2012.

RONALD A. WHITE
UNITED STATES DISTRICT JUDGE